Housing Authority of the City of Pittsburgh, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent; Equitable Gas Company, Intervenor.

420

Argued May 8, 1979, before President Judge Bow-
MAN and Judges CRUMLISH, JR., WILKINSON, JR., MEN-
CER, ROGERS, BLATT and MACPHAIL. Judges DISALLE
and CRAIG did not participate.

*James R. Duffy*, for petitioner, Allegheny County Housing Authority.

*John R. Orie, Jr.*, Assistant General Counsel, with him *David B. Washington,* General Counsel, for petitioner, Housing Authority of the City of Pittsburgh.

*Frank B. Wilmarth*, Assistant Counsel, with him *Shirley Rae Don,* Deputy Chief Counsel, and *George M. Kashi,* Chief Counsel, for respondent.

OPINION BY JUDGE MACPHAIL, October 11, 1979:

The Housing Authority of the City of Pittsburgh (Authority) is a public corporation formed pursuant to the Housing Authorities Law (Law), Act of May 28, 1937, P.L. 955, *as amended*, 35 P.S. §1541 et seq. to establish and administer low rent public housing in the city of Pittsburgh at rentals established by the United States Department of Housing and Urban Development (HUD) mandate. The Authority operates several buildings including three high rise apartment buildings for low income elderly. Those buildings are presently heated by natural gas furnished by Equitable Gas Company (Equitable).

On October 9, 1976, the Pennsylvania Public Utility Commission (PUC) adopted regulations establishing priorities to be used by utilities in allocating available gas supplies among its customers. 52 Pa. Code §§69.21-69.27. Pursuant to those regulations, Equitable classified the Authority's three high rise apartment buildings as Priority 6—"Firm large noncritical commercial and industrial requirements for boiler fuel use." The Authority filed a complaint with the PUC contesting that classification and contending that the high rise units should be classified as Priority 1—"Residential and firm critical commercial essential human needs." In the alternative, the Authority requested that the PUC grant it an exception to the

regulations because of the Authority's peculiar financial and political status as an instrumentality of the Federal and State governments.

After a hearing, an Administrative Law Judge (ALJ) held that the Authority had been correctly classified by Equitable in Priority 6 "as to its boiler load" and that the Authority had failed to carry its burden of proof to sustain its contention that it should be granted an exception to the regulations.[1] With some modification not pertinent here, the PUC unanimously approved the decision of the ALJ.

When the Authority's exceptions to the PUC order were denied, this appeal was filed.

The Authority contends that (1) the PUC erred as a matter of law when it approved Equitable's classification of the three high rise buildings as Priority 6 and (2) the classification of the subject buildings as Priority 6 violates the Equal Protection Clause of the United States Constitution because it authorizes less gas for persons in those buildings than for those living in other public housing units.

At first blush, it would appear that high rise apartments are residential rather than commercial or industrial in character. However, the priorities set forth in 52 Pa. Code §69.21 are carefully defined in words of art in 52 Pa. Code §69.22. Moreover, the classification of priorities for allocation of available gas must be carefully distinguished from the classification of buildings according to their use. Thus, in Priority 1, the term "critical uses" is defined as "Gas usage where natural gas, propane, or other gaseous fuel is the only feasible form of energy due to its combustion characteristics. . . ." 52 Pa. Code §69.22. It is Eq-

---

[1] The ALJ did affirm the action of Equitable in giving the Authority temporary Priority 1 status until March 31, 1979, by which date the Authority was ordered to convert the high rise apartments to an alternate fuel system or revert to Priority 6.

uitable's contention that the Authority could convert to oil or some other alternate fuel. The PUC agrees with Equitable's position and so do we. The record contains substantial evidence that conversion of the boilers serving the apartments is physically feasible. Accordingly, we hold that the subject buildings could not be classified as Priority 1.

The Authority argues that if it does not belong in Priority 1, neither does it belong in Priority 6 since "commercial use" is defined in 52 Pa. Code §69.22 as, "[g]as usage by customers engaged primarily in the sale of goods or services including, but not limited to, consumption by office buildings, institutions, and governmental agencies. Commercial use shall not include use of gas for manufacturing or electric power generation." The ALJ and PUC agreed with Equitable's argument that "commercial" as used in the description of users to be included in Priority 6 includes the Authority because the Authority is the customer of Equitable and the Authority, in turn, furnishes natural gas to the tenants. Equitable also argues that since the high rise apartments are clearly excluded from Priority 1 and they are certainly not industrial, by a process of elimination they have to be commercial. For either or both reasons, we are satisfied that the classification of the high rise apartments in Priority 6 was proper.

In addition to requesting Priority 1 status, the Authority petitioned for an exception to the regulations on the basis that alternative fuel capability was not feasible. The ALJ noted that the orders of the PUC of July 7, 1976 did provide for a change in priority classification if alternate fuel capability was not feasible. However, in those orders the PUC set forth enumerated criteria for determining the feasibility of alternative fuel capability, which include: economic and technical feasibility; applicant's attempts at conserva-

tion; applicant's attempts to locate other sources of supply, both gas and alternative fuels; the extent and duration of requested relief; and end-use to which the relief would be applied.

We have reviewed the record, and we are unable to find substantial evidence to support the Authority's contention that alternative fuel capability is not feasible. Rather, we agree with the PUC that the Authority has failed to carry its burden of proof pursuant to the provisions of Section 332(a) of the Public Utility Code, 66 Pa. C.S. §332(a).[2] Therefore, we will affirm the PUC's decision to withhold an exception until such time as the Authority can provide more concrete evidence of lack of funding. On the present record it is clear that the Authority has filed no formal application to HUD, that it has made no effort to secure money through available loan procedures and that it has made no effort to secure utility cost subsidization monies from HUD. The most that the Authority was able to present were the conclusions of a witness on the basis of conversations he had had with HUD representatives concerning these matters. The lack of substantial evidence destroys the effectiveness of the argument. We agree with the ALJ that the Authority has failed to meet its burden of proof and, therefore, is not entitled to an exception.

The Authority's final argument centers around the equal protection rights of the public housing residents. In effect, the Authority reasons that in the event of a distribution curtailment of natural gas, the public housing residents living in the subject buildings, would have less heat than the residents living in Priority 1 public housing buildings. While we agree that

_____
[2] Except as may be otherwise provided in section 315 (relating to burden of proof) or other provisions of this part or other relevant statute, the proponent of a rule or order has the burden of proof.

ample heat is within the Federal mandates accorded all public housing residents, we are at a loss to understand how the individuals residing in the subject buildings will be denied ample heat. In the event of a curtailment, if the residents of the subject buildings are in fact denied ample heat, it will be because the Authority has refused to convert their boilers to alternative fuels, not because the PUC has denied them equal protection under the law. If the other public housing units encompassed by the Authority's argument are classified Priority 1, it is so because they fall squarely within that class, and do not have alternative fuel capabilities. Such has not been proven to be the case here.

We have been unable to find an error of law in the PUC's curtailment classifications and we are unable to find substantial evidence to support a finding of economic unfeasibility so as to warrant an exception to the classification imposed upon the Authority. Finally, we cannot find even a scintilla of evidence to support a decision that the Authority's constitutional rights have been violated. Therefore, we affirm.

Judge CRUMLISH, JR. dissents.

ORDER

AND Now, this 11th day of October, 1979, the order of the Public Utility Commission dated August 2, 1978, is hereby affirmed.